

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| SANDRA JOHNSON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. |
| § | 5:05-CV-268-C |
| § | ECF |
| JO ANNE B. BARNHART, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## REPORT AND RECOMMENDATION

Plaintiff Sandra Johnson seeks judicial review of a decision of the Commissioner of Social Security related to her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment.

Under 42 U.S.C. § 405(g), a court may review any final decision of the Commissioner to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

I.   **Statement of the Case**

Johnson was diagnosed with malignant non-Hodgkin's lymphoma[1] in January 2003 at the age of fifty years old following increasing abdominal pain in the months prior to the diagnosis. (Tr. 128, 130.) Her physicians treated the disease with six cycles of chemotherapy that ended in May 2003, and there was no recurrence of the disease after chemotherapy treatment ended. (Tr. 573.) On October 22, 2003, Johnson's primary care physician, Michael Shaffer, D.O., noted that a recent CT scan was within normal limits and that Johnson's oncologist had "no concerns" at that time. (Tr. 183.)

Johnson filed applications for DIB and SSI alleging that she was unable to work because of non-Hodgkin's lymphoma. (Tr. 20, 82.) The Administrative Law Judge (ALJ) determined that Johnson had non-Hodgkin's lymphoma, intercostal neuritis[2], and depression and therefore had severe impairments. (Tr. 21.) He further determined that she was disabled and entitled to benefits beginning October 15, 2002, her alleged onset date, but determined that on October 22, 2003, she experienced medical improvement related to her ability to work and was no longer disabled. (Tr. 28.)

---

[1] Non-Hodgkin's lymphoma is a cancerous growth of cells in the lymphatic system. Lymphoma Information Network, http://www.lymphomainfo.net/nhl/description.html (last visited June 21, 2006).

[2] Intercostal neuritis is the inflammation of the nerves in muscles between ribs. My Electronic MD, Intercostal Neuritis, http://www.myelectronicmd.com/get_reference.php?Id=1214&condition=INTERCOSTAL%20NEURITIS&symname=I&typ=3 (last visited June 21, 2006).

2

Johnson does not contest the ALJ's decision that she became disabled and was entitled to DIB and SSI on October 15, 2002. Rather, she contends that the ALJ erred in his application of the law in determining that she was no longer disabled as of October 22, 2003. She argues that the ALJ erred in applying the eight-step sequential analysis required in medical improvement cases and contends that he limited his finding regarding medical improvement to evidence indicating that her lymphoma was in remission and failed to consider medical records indicating that the pain related to her intercostal neuritis had not resolved and that her depression had not improved. She also argues that the Appeals Council erred in denying her request for review.

Johnson's argument that the ALJ failed to apply the eight-step sequential analysis to her depression has merit. The ALJ did not consider the limitations caused by her mental impairments during her closed period of disability and did not consider whether she experienced medical improvement in her mental impairments to an extent that she was able to perform the ongoing requirements of work.

## II. Discussion

The record indicates that Johnson experienced depression and anxiety she attributed in part to her diagnosis of lymphoma, poor physical health, and fear that the disease would recur. (*See, e.g.,* Tr. 511, 604, 642.) Lymphoma patients often experience psychiatric conditions such as depression and anxiety during chemotherapy treatment and during

3

remission of the disease.[3] The ALJ acknowledged that Johnson experienced such problems during her closed period of disability – he acknowledged that Johnson reported in August 2003 that her mood was unstable, she spent a lot of time crying, and was anxious and worried about her condition. (Tr. 22, 197.) The ALJ, however, did not consider or incorporate non-exertional limitations that may have been caused by Johnson's mental and emotional conditions into his initial residual functional capacity on which he based her closed period of disability. (Tr. 22.) The ALJ determined that beginning October 15, 2002, Johnson's residual functional capacity was "reduced to markedly less than sedentary due to inability to sit, stand, or walk for a vocationally meaningful period of time due to pain and due to the inability to do any meaningful lifting and/or carrying." *Id.* It appears therefore that the ALJ considered only Johnson's lymphoma in formulating the residual functional capacity determination and did not consider any attendant mental limitations. *See id.*

The ALJ's determination as to Johnson's residual functional capacity during the time in which he found her to be disabled is therefore not supported by substantial evidence. When determining residual functional capacity, the ALJ must consider the individual's ability to meet the physical demands, mental demands, sensory requirements, and other requirements of work; thus, the effects of all symptoms reasonably attributed to a medically

---

[3] Lymphoma Research Foundation, "Living with Cancer," http://www.lymphoma.org/site/pp.asp?c=bfIKIVMIG&b=368917 (last visited June 21, 2006); Psychosomatics, "Psychiatric Symptoms with Non-Hodgkin's Lymphoma" http://psy.psychiatryonline.org/cgi/content/full/43/6/507 American Cancer Society, "What Are the Possible Side Effects of Chemotherapy," (last visited June 21, 2006); http://www.cancer.org/docroot/ETO/content/ETO_1_4X_What_Are_the_Side_Effects_of_Chemotherapy? (last visited June 21, 2006).

determinable impairment must be considered in determining a claimant's residual functional capacity. 20 C.F.R. §§ 404.1545(a), 416.945(a); S.S.R. 96-7P, 1996 WL 374186 at *2. The symptoms and limitations posed by Johnson's depression and anxiety would have resulted in non-exertional limitations during her treatment and remission. However, the ALJ did not consider the extent to which Johnson's mental impairments limited her ability to work during her closed period of disability. Because the ALJ did not address Johnson's mental limitations in reaching his decision regarding her closed period of disability there is no means by which to determine whether he found that Johnson experienced medical improvement in her mental impairments and whether such improvement increased her functional capacity to perform work activities.

In a case involving a closed period of disability, "'the [ALJ] determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision.'" *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002) (quoting *Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987)). Thus, after the ALJ decides that the claimant is disabled and entitled to benefits he decides whether and when disability and payment of benefits ends. The latter decision is reached by applying the eight-step sequential analysis set forth in the regulations at 20 C.F.R. §§ 404.1594(f), 416.994(b)(5).

The eight-step sequential analysis is similar to the five-step sequential analysis used in typical disability cases in which a closed period is not at issue. However, whereas there

5

is a shifting of the burden of proof under the five-step analysis, under the eight-step analysis the burden of proof remains with the Commissioner; in cases in which termination of benefits is at issue "the government must, in all relevant respects, prove that the person is no longer disabled."[4] *Waters*, 276 F.3d at 718.

The sequential eight-step sequential analysis requires a determination as to:

> (1) whether the claimant is engaged in any substantial gainful activity;
>
> (2) if not, whether the claimant has an impairment or combination of impairments meeting or equaling the severity of an impairment listed in Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P;
>
> (3) if not, whether there has been medical improvement as shown by a decrease in medical severity;
>
> (4) if there has been medical improvement, whether the medical improvement is related to claimant's ability to do work;
>
> (5) if the answer is no to steps three or four, whether any exceptions in 20 C.F.R. § 404.1594(d) apply;
>
> (6) if the answer is yes to step four, whether all current impairments in combination are severe;
>
> (7) and if they are severe, whether, in considering a claimant's residual functional capacity, a claimant can do work done in the past; and
>
> (8) if not, whether the claimant can do other work given the claimant's residual functional capacity.

20 C.F.R. § 404.1594(f)(1)-(8) (2005).

---

[4] Under the five-step sequential evaluation the claimant bears the burden of proof on the first four steps. 20 C.F.R. § 404.1520. At the fifth step the burden shifts to the Commissioner to show that the claimant is capable of performing work available in the national economy. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) (citation omitted). Once the Commissioner makes this finding, the burden of proof returns to the claimant to rebut the finding. *Id.*

Critical to the eight-step analysis is whether the claimant has experienced medical improvement in his impairments and the effect such improvement has on his ability to work. 20 C.F.R. § 404.1594(f). These determinations are made at steps three and four of the sequential analysis. 20 C.F.R. § 404.1594(f)(3)-(4). At step three of the analysis the ALJ must determine whether the claimant experienced medical improvement. The regulations define "medical improvement" as any decrease in the medical severity of the claimant's impairment(s) which was present at the time of the most recent favorable decision that the claimant was disabled or continued to be disabled; a determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with the claimant's impairment(s). 20 C.F.R. § 404.1594(b)(1). Whether there is medical improvement related to the claimant's ability to work depends on whether there is (1) a decrease in the medical severity of the claimant's impairment(s) and (2) an increase in the claimant's functional capacity to perform work activities. 20 C.F.R. § 404.1594(b)(3). In this case, the ALJ did not carry the burden of proof at steps three and four of the sequential analysis because he did not consider whether Johnson experienced a decrease in the severity of her mental impairments and whether the decrease in severity increased her residual functional capacity.

It should be noted that the ALJ incorporated mental limitations into his second residual functional capacity determination on which he grounded his decision that Johnson's disability ended. However, the determination as to whether the claimant experienced medical

7

improvement related to the ability to work is based on comparing the evidence and determining whether the claimant experienced a decrease in medical severity of his impairment(s). 20 C.F.R. § 404.1594(c). Because the ALJ did not determine the limitations caused by Johnson's mental impairments during her closed period of disability, it cannot be determined whether he found that she experienced a decrease in the severity of her depression and anxiety on October 22, 2003. The evidence indicates that she did not experience a decrease in the severity of the impairments.

"The [Commissioner's] decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000) (citing *Knipe v. Heckler,* 755 F.2d 141, 149 n.16 (10th Cir.1985)). Because the mental limitations attendant to Johnson's lymphoma during her closed period of disability were not addressed in the ALJ's decision, it cannot be determined whether substantial evidence supports his finding that she experienced medical improvement related to her ability to work. The substantial evidence standard requires more than a "simple search of the record for isolated bits of evidence" that would support the Commissioner's decision; the record must be considered as a whole. *Singletary v. Bowen,* 798 F.2d 818, 822-23 (5th Cir. 1986) (citation omitted). Accordingly, a court must "take into account whatever in the record fairly detracts" from the supporting evidence. *Id.* (quotation omitted). The ALJ's failure to determine whether Johnson suffered from mental impairments that affected her residual functional capacity during her closed period of disability detracts from his

conclusion that she experienced medical improvement to an extent that she was capable of work.

## III.   Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse the Commissioner's decision and remand Johnson's case for further administrative proceedings.

## IV.   Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: _____June 30_____ 2006.

_____
NANCY M. KOENIG
United States Magistrate Judge